UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Michelle Wong, ) | Civil Action No.: 4:17-cv-02768-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff Michelle Wong ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act").[1] The matter is before the Court for review of the Report and Recommendation of United States Magistrate Judge Thomas E. Rogers, III, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. The Magistrate Judge recommends the Court affirm the Commissioner's decision. [ECF #13]. Plaintiff raises several objections to the Magistrate Judge's recommendation. [ECF #15]. Defendant responded to those objections. [ECF #18].

**Factual Findings and Procedural History**

Plaintiff was forty-five on the date of her alleged onset of disability.[2] The facts, including the medical history and evidence contained within the record, are adequately set forth by the Magistrate Judge in the Report and Recommendation. [ECF #13, pp. 2-14]. Briefly stated, Plaintiff alleges

---

[1] In Plaintiff's initial brief, she also alleges that she sought supplemental security income ("SSI"); however, the remainder of the record reflects she sought disability benefits only.

[2] Initially, Plaintiff alleged a disability onset date of November 14, 2008. However, she amended the date to December 23, 2010 at the hearing.

disability due to depression, back surgery due to ruptured desks, diabetes, and arthritis. [ECF #6-3, Ex. 4A]. Plaintiff has suffered from ongoing low back pain for several years. In December of 2010, Plaintiff underwent an MRI which revealed multilevel degenerative disc disease. [ECF #6-9, Ex. 10F]. On June 6, 2011, Plaintiff was admitted for lumbar decompression and posterior lumbar interbody fusion surgery. [ECF #6-9, Ex. 9F]. On August 20, 2011, Plaintiff completed a function report stating she could not do repetitive motion work, bend, stand or walk for long periods of time and wore a brace that limited movement. [[ECF #6-6, Ex. 8E]. On November 2, 2011, Plaintiff was referred to Dr. Tony DiNicola for chronic pain management. Dr. DiNicola assessed Plaintiff as having degenerative disc disease, lumbar spondylosis, lumbar spinal stenosis, and status post L2-3 decompression and fusion. [ECF #6-9, Ex. 11F].

On December 2, 2011, Dr. Matthew Fox, a state agency reviewing consultant, reviewed Plaintiff's records and opined that Plaintiff could lift and carry twenty pounds occasionally, lift and carry 10 pounds frequently, stand, walk, and/or sit six hours each in a workday, frequently climb ramps and stairs, balance kneel, crouch, and crawl, occasionally climb ladders/ropes/scaffolds and occasionally stoop. [ECF #6-3, Ex. 4A]. Dr. Hugh Clarke, another state agency reviewing consultant essentially agreed with this review. [[ECF #6-3, Ex. 7A].

Plaintiff underwent another MRI which showed stable disc disease changes without progressing disc protrusion and stable multilevel degenerative changes elsewhere. A few days later, an EMG/NCV showed mild median neuropathy at her right wrist. [ECF #6-10, Ex. 21F]. Plaintiff continued to treat with Dr. DiNicola, and also continued treatments with Dr. Christian Nowatka in 2012, who indicated in a statement that he had treated Plaintiff since 2003.

On October 4, 2012, Dr. DiNicola submitted a statement. He indicated that Plaintiff would be

2

limited to no more than sedentary work. He stated she should lift no more than 15-20 pounds, that she would need to change positions between sitting and standing "frequently" due to low back pain. [ECF #6-10, Ex. 19F]. Dr. DiNicola further noted in a follow up visit that Plaintiff still had significant difficulties with any prolonged activity with standing, walking, or even sitting or long periods of time. [ECF #6-10, Ex. 20F]. On February 19, 2013, Dr. Nowatka also prepared a statement regarding Plaintiff's condition. He stated that he has been treating her as her primary care physician and that Plaintiff continues to experience back pain despite having surgery. He further stated that Dr. DiNicola would have a better idea regarding Plaintiff's limitations but that it would be consistent with her condition to have difficulty bending and lifting. He also noted that she would have difficulty maintaining either a standing or a seated position and would need to change positions "frequently." Finally, he stated that she would have difficulty maintaining a regular work schedule due to the need for frequent breaks and frequent position changes due to her low back pain. [ECF #6-10, Ex. 24F].

Plaintiff initially received an unfavorable decision by the ALJ on June 21, 2013. The Appeals Council denied her request for review of that decision on October 7, 2014, making the ALJ's decision the final decision by the Commissioner. After the case was remanded, Plaintiff testified at a second hearing on June 22, 2016. Thereafter, the ALJ issued an unfavorable decision on September 16, 2016, determining Plaintiff was not disabled. The Appeals Council denied this request for review on September 18, 2017, thereby making the ALJ's decision the decision of the Commissioner. In the decision, the ALJ's findings were as follows:

> (1) The claimant last met the insured status requirements of the Social Security Act on September 30, 2013.
>
> (2) The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 23, 2010 through

her date last insured of September 30, 2013 (20 CFR 404.1571 *et seq.*).

(3) Through the date last insured, the claimant had the following combination of medically determinable impairments: lumbar degenerative disc disease status post fusion surgery with failed back syndrome; morbid obesity; right carpal tunnel syndrome (CTS); depression, and anxiety (20 CFR 404.1520(c)).

(4) Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

(5) After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except that she can never climb ladders, or be exposed to dangerous machinery or unprotected heights. She can occasionally stoop, and can frequently balance, crouch, kneel, crawl, climb stairs, and use her right hand to finger. She needs a sit stand option, and will need to change position every 45 minutes while remaining at the work station. She can perform simple, routine tasks and follow instructions for two hours at a time before needing a normal break of either 15 minutes, or once per day, a 30 minute meal break.

(6) Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

(7) The claimant was born on January 25, 1968 and was 45 years old, which is defined as a younger individual age 45-49, on the date last insured (20 CFR 404.1563).

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Through the date last insured, considering the claimant's age,

education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1529, 404.1569(a)).

(11) The claimant was not under a disability, as defined in the Social Security Act, at any time from December 23, 2010, the alleged onset date, through September 30, 2013, the date last insured (20 CFR 404.1520(g)).

[ECF #6-11, pp. 18-32].

Plaintiff requested a review of the ALJ's decision. The Appeals Council denied Plaintiff's request to review the ALJ's decision, making the decision of the ALJ the final decision of the Commissioner. In making that decision, the Appeals Council indicated that it considered the reasons Plaintiff disagreed with the ALJ's decision. On October 12, 2017, Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. [ECF #1]. Both Plaintiff and Defendant filed briefs [ECF #8; ECF #9; ECF #10], and the Magistrate Judge issued his Report and Recommendation on November 6, 2018, recommending that the Commissioner's decision be affirmed. [ECF #13]. The Magistrate Judge recommends affirming the Commissioner's decision because the record contains substantial evidence to support the decision that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. [ECF #13]. Plaintiff filed objections on November 20, 2018. [ECF #15]. Defendant replied to these objections on December 4, 2018. [ECF # 18].

### Standard of Review

**I.**     **Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than

5

a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## II. The Court's Review of the Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the Report and Recommendation ("R & R") to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

## **Applicable Law**

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether she is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.\* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that her impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving she could not perform her customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is

7

therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that she can no longer perform her previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors.

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing past relevant work;[4] and (5) whether the impairment

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish her impairment is disabling at Step 3).

[4] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

prevents her from doing substantial gainful activity. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). Once an individual has made a prima facie showing of disability by establishing the inability to return to past relevant work, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a vocational expert demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to past relevant work. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

## Analysis

Plaintiff objects to the recommendation that the ALJ properly evaluated the opinion evidence of Dr. DiNicola and Dr. Natawka. positing that without an adequate evaluation of the opinion evidence and an explanation for the rationale behind the weight afforded these opinions, the case must be

9

remanded for further review. Plaintiff's central argument is that the ALJ did not properly evaluate these opinions as it relates to the residual functional capacity ("RFC") determination that Plaintiff would need a "sit/stand option" at work every 45 minutes, rather than "at will."

An ALJ must consider and weigh all medical opinions included in a claimant's case. 20 C.F.R. § 404.1527(c). Generally an ALJ should give the opinion of treating physicians controlling weight if those opinions are well-supported by "medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with other substantial evidence" within the record. 20 C.F.R. § 404.1527(c)(2). In considering the appropriate weight to give a treating physician's opinion, an ALJ must give good reasons in explaining the weight given such an opinion. 20 C.F.R. § 404.1527(c)(2). In weighing this evidence, an ALJ must avoid substituting his own medical judgment for that of the treating physician or physicians where the opinions of the treating physicians are supported by medical evidence. *Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09-CV-564, 2011 WL 549861, at *7 (S.D. Ohio 2011). If, however, a physician's opinion is not supported by clinical evidence or is otherwise inconsistent with other substantial evidence in the record, it may receive less weight. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). In that instance, an ALJ has discretion to give less weight to a physician opinion in the face of "persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

In providing an explanation for the RFC determination, the ALJ discussed Dr. DiNicola's opinion and assigned it great weight. The ALJ explained that while she largely adopted Dr. DiNicola's opinion in formulating an RFC determination, a few aspects of the opinion were vague or not fully supported by medical evidence. Thus, the ALJ did not attribute controlling weight to the opinion. While Dr. DiNicola opined that Plaintiff would need to "change positions between sitting and standing frequently," the limitation included within the RFC states that Plaintiff would need to change position

10

every forty-five (45) minutes. Plaintiff argues that the ALJ does not properly explain what testimony and records she relied upon to make this determination. However, as aptly pointed out by the Magistrate Judge (page 22 of the R&R), a review of the ALJ's decision shows that the ALJ carefully considered treatment notes from November 2011 in detail, including Plaintiff's reported symptoms at that visit. In discussing the RFC, the ALJ also discussed Plaintiff's complaints and examination at a December 2011 visit, referenced an MRI and its results in detail, and further considered and expressly discussed examinations from Dr. DiNicola throughout all of 2012, while also detailing the information provided by Dr. DiNicola in the statement provided. In fact, the ALJ further summarized the evidence in her opinion stating the medical records, which she discussed previously in her decision, supported a finding that she was capable of a wide range of sedentary work and that she had normal gait and station, did not require the use of a brace, and did not require an assistive device. Thus, despite Plaintiff's objection to the contrary, the ALJ did adequately explain which specific evidence within the record she found inconsistent with Dr. DiNicola's statements. Moreover, Plaintiff argues that the ALJ was unreasonable in determining that Dr. DiNicola's reference to Plaintiff needing "frequent" breaks was vague, which was one of the reasons given for the ALJ's determination to provide this medical opinion with "great" rather than "controlling weight." In making this objection, Plaintiff argues that remand is required because the vocational expert at the hearing testified that it would be work preclusive to have "more than the usual number of breaks in an 8 hour day." Plaintiff then argues that Dr. DiNicola's opinion that she would need "frequent breaks" is consistent with work preclusive activity. However, a review of the hearing testimony reveals that the vocational expert was referring to extended break periods when giving this testimony, as opposed to changing position from sitting to standing. The vocational expert actually testified that an individual needing to change position "as frequently as every 45 minutes"

11

would still be able to meet critical job demands. [ECF #6-11, pp. 70-71]. Thus, despite considering Plaintiff's objection regarding the ALJ's explanation in assessing Dr. DiNicola's opinion, this Court finds that the ALJ's decision is supported by substantial evidence of record.

This Court further considered Plaintiff's objection regarding the ALJ's explanation of the weight given to Dr. Nowatka's opinion. Plaintiff argues that the ALJ did not provide the necessary explanation for why she only afforded Dr. Nowatka's opinion "some" weight. To the contrary, the ALJ explained that Dr. Nowatka did not provide any specifics, such as the length or duration of time or frequency, related to the limitations provided for in his opinion. Therefore, the ALJ found it less informative that other evidence of record in formulating the RFC. The ALJ clearly found it significant that Dr. Nowatka stated that Dr. DiNicola would have a better understanding of Plaintiff's limitations. Some of Dr. Nowatka's statements were inconsistent with Dr. DiNicola's opinion, who the ALJ had already accorded great weight to and who Dr. Nowatka expressly defers to in his opinion. For example, Dr. Nowatka opined that Plaintiff would have difficulty maintaining her regular work schedule, while Dr. DiNicola stated Plaintiff could perform sedentary work. The ALJ considered the fact that Dr. Nowatka's own notes include few references to Plaintiff's back impairment, but one of the reasons Dr. DiNicola offered the opinion that Plaintiff needed to change position frequently was based in part due to her back issues. This Court therefore finds that the ALJ's assessment of Dr. Nowatka's opinion is supported by substantial evidence of record.

Moreover, this Court does not agree with Plaintiff that *Hill v. Berryhill*, No. 0:15-cv-05091, 2017 WL 2703971 (D.S.C. June 23, 2017) is controlling in this case. *Hill* considered a plaintiff's argument that the ALJ erred in assessing the RFC because the ALJ cherry-picked facts supportive of non-disability, improperly discredited the subjective symptoms, and relied on a one-sided view of the

medical evidence to find that the plaintiff was not disabled. Such is not the case here. The ALJ's decision makes clear that she considered all relevant medical evidence in support of Plaintiff's limitations, and in fact, expressly considered both physician opinions in formulating the RFC. While the ALJ did deviate in some respect with the opinions provided by the physicians, she gave an adequate explanation, supported by the evidence and testimony of record in making that decision. Plaintiff also argues that the ALJ gave no explanation for why she deviated from her initial determination of providing an "at will" sit/stand option in a prior decision. However, as Plaintiff acknowledges, the ALJ is not required to provide an explanation for deviating from a prior RFC, and further, as explained above, the ALJ did provide a sufficient explanation for the RFC determination in the new decision. As pointed out by the Commissioner, the ALJ reviewed medical evidence that post dated the prior decision. Finally, Plaintiff succinctly argues at the conclusion of her objections that the ALJ somehow erred in her analysis of the physician opinions because she did not accept the non-examining state agency consultant opinions. This Court notes that while the ALJ afforded those opinions "some" weight, she apparently felt Plaintiff was further limited than suggested by the consultants because she gave Plaintiff an RFC that was more restrictive than suggested in the state agency opinions. Plaintiff's argument that the ALJ somehow did not "show her work" because she did not have the benefit of other medical opinions is therefore unpersuasive. This Court finds that the ALJ's explanation of her assessment of Plaintiff's treating physicians and how their opinions helped the ALJ formulate the RFC is supported by substantial evidence within the record.

## **Conclusion**

The Court has thoroughly reviewed the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections to the R & R, Defendant's

response to Plaintiff's objections, and the applicable law. For the foregoing reasons, the Court adopts the recommendation of the Magistrate Judge. [ECF #13]. The decision of the Commissioner is affirmed.

**IT IS SO ORDERED.**

Florence, South Carolina  
February 12, 2019

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge